UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERCHANTS BANK OF INDIANA, | ) |
| | ) |
| Plaintiff / Counterclaim Defendant, | ) ) ) ) |
| v. | ) No. 1:21-cv-02669-JRS-MG ) |
| NORMA CURBY, | ) ) |
| Defendant / Counterclaim Plaintiff. | ) ) ) ) |

**Order on Motion for Summary Judgment**

**I.     Introduction and Background**

This is a banking dispute about a flurry of transactions in January and February of 2021. Roughly $250,000 was lost, perhaps to fraud. (At issue now is partial summary judgment on the money question; the fraud claims are left for trial.) The basic facts are settled:[1]

Curby, allegedly acting under instruction from her shadowy foreign employer "Well & Able," went online and opened an account at Merchants Bank. The account was funded by an initial deposit of $250,000. Curby transferred most of that money out of the Merchants account, into her personal account at a Georgia bank, and then out from there again, presumably to "Well & Able" (though no one is very forthcoming

---

[1] Both parties have provided factually well-supported briefs in compliance with Local Rule 56-1. The following narrative summarizes Merchants' "Material Facts Not in Dispute," (Pl.'s Br. Supp. 5–9, ECF No. 48), and Curby's "Counter Statement of Facts" and "Statement of Material Facts in Dispute," (D.'s Resp. 4–9, ECF No. 53).

on that point). No sooner had she done this than the initial deposit was reversed as fraudulent—it came not from a "Well & Able" customer, as Curby allegedly believed, but from a charitable trust in New Jersey. Merchants paid back the trust its $250,000 and debited Curby's account at Merchants. But Curby had no money in the account to cover it—she had already sent most of the money off—so the Merchants account was overdrawn by $226,994.50.

Merchants is stuck with the loss unless and until it can recover from Curby, which it now seeks to do with its breach of contract claim. Curby, for her part, says that she never agreed to the terms of her account with Merchants and that in any event the terms are unconscionable. She also counterclaims against Merchants for its handling of the transfers between her Merchants account and her Georgia account.

Now before the Court is Merchants' Motion for Partial Summary Judgment, (ECF No. 46), which seeks a resolution of Count III of the Complaint, (ECF No. 1), for breach of contract, and a resolution of Curby's Counterclaim, (ECF No. 24). Curby opposes summary judgment on both claims but has not brought a cross-motion for summary judgment.

## II. Legal Standard

The summary judgment standard is well established:

> Summary judgment is appropriate where the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [*Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)] (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). "[S]peculation is not sufficient

> to survive summary judgment," *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1039 (7th Cir. 2016); "there must be evidence," *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505.

*Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court here construes facts "in the light most favorable to" the non-movant Curby and draws "all reasonable inferences in [her] favor." *Id.* at 572 (citing *Makowski*, 662 F.3d at 822). But Curby is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quoting *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)).

Curby must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Id.* (citing *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)).

### III. Discussion

#### A. Breach of Contract

In Indiana, "[a] plaintiff raising a breach of contract claim must show the existence of a contract, the defendant's breach of that contract, and damages." *Shenmei Yuan v. Wells Fargo Bank, N.A.*, 162 N.E.3d 481, 486 (Ind. Ct. App. 2020) (citing *Alexander v. Linkmeyer Dev. II, LLC*, 119 N.E.3d 603, 612-13 (Ind. Ct. App. 2019)). Here, Merchants' well-supported motion makes out a prima facie case satisfying those three elements. (Pl.'s Br. Supp. 9–20.) Curby argues in response that there was no contract because its terms were unenforceable clickwrap, (Pl.'s Resp. 9–16, ECF No. 53); that,

3

even if there were a contract, she did not breach it because its liability provisions are unclear, (*id.* at 16–20); and that any enforceable contract would be unconscionable, (*id.* at 21–22).

          i. Contract Formation

Curby argues that she never made a contract with Merchants. The Court begins with the undisputed facts:

On January 22, 2021, Curby went online to open a bank account at Merchants. First she filled in her personal information and clicked a box saying "I accept the Electronic Signature Agreement." (Saunders Aff. ¶¶ 14–15, ECF No. 47-1.) Then she encountered a screen called "Accept Disclosures." (*Id.* ¶ 19.) That screen displayed five document titles, each with a "View Disclosure" link next to it and an "Accept" button. (*Id.* ¶ 20.) At the top of the page, centered, between the page title and the box with the document links, is a sentence reading, "By selecting Accept beside each disclosure you are acknowledging that you have read and accepted the terms and conditions for each account selected. The account disclosures will be emailed to you." (*Id.*) Curby clicked "Accept" on all five documents before clicking "Continue" to finalize her account. (*Id.* ¶ 22.) The documents were emailed to her automatically. Three days later, on January 25, a bank employee separately emailed Curby a copy of the "Account Agreement." (*Id.* ¶ 31.) Curby afterwards proceeded to use the Merchants account for the series of transactions giving rise to this dispute.

Curby would have the Court hold the contract unenforceable as "clickwrap." (Def.'s Resp. 9, ECF No. 53.) The problem with that argument is that most courts,

including Indiana courts, find clickwrap to be enforceable. *Adsit Co. v. Gustin*, 874 N.E.2d 1018, 1023 (Ind. Ct. App. 2007) (finding enforceable a clickwrap forum selection clause); *Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009) (same); *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (explaining "[t]here is nothing automatically offensive about [clickwrap] agreements" and collecting cases upholding them); *see also Rojas v. GoSmith, Inc.*, No. 2:17-CV-281-JVB-JEM, 2020 WL 831585, at *3 (N.D. Ind. Feb. 20, 2020) (explaining Indiana law on clickwrap agreements). In Indiana, "[t]he primary focus when deciding whether a clickwrap agreement is enforceable is whether the party clicking it had reasonable notice of and manifested assent to the agreement." *Jallali*, 908 N.E.2d at 1173 (citing *Adsit*, 874 N.E.2d at 1023). Reasonable notice and manifested assent are determined by an objective inquiry. *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005); *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 619 (Ind. Ct. App. 2015).

Here, reasonable notice and manifestation of assent are beyond doubt satisfied— no reasonable juror could find otherwise. Is the Court to believe that Curby, who claims to be an "'[e]ntrepreneur and experienced senior executive for [F]ortune 50 corporations,' with '[o]ver 30 years of experience in business strategy, general management, M&A, new business development, logistics and marketing in various industries, including healthcare, food, agricultural, and industrial chemicals,'" (Def.'s Answer ¶ 8), did not know she had assented to a contract with Merchants? (Curby Aff. ¶ 12, ECF No. 53-1.) Or that she had no notice of that contract's terms when they

5

were there for the reading before she assented and emailed to her twice after? Perhaps Fortune 50 companies are not what they used to be, but surely a senior executive knows that she cannot open an online bank account without agreeing to terms and conditions. One might think clicking "Accept" five times on a page of "terms and conditions" would tip her off.

Curby formed a contract with Merchants upon opening her account. If there is any doubt as to that point, her subsequent conduct removes it: Curby continued to use the Merchants account after receiving an emailed "Account Agreement." (Pl.'s Br. Supp. 14, ECF No. 48.) She thereby ratified the contract. *Indiana Ins. Co. v. Margotte*, 718 N.E.2d 1226, 1229 (Ind. Ct. App. 1999). Had Curby wished to escape the contract she (allegedly inadvertently) made in the online account-opening process, the latest she could have done so was upon receiving the emailed terms. It is too late to say now that she and Merchants had no agreement over her account.

### ii. Breach

Merchants argues that Curby breached their contract by refusing to reimburse it for the $226,994.50 overdraft on her account. Curby argues that key words in the contract's liability provisions—including "charge," "overdraft," and "provisional credit"—are undefined and therefore unclear. (Def.'s Resp. 18–20, ECF No. 53.)

The Court looks to the language of the contract. *Care Group Heart Hosp., LLC, v. Sawyer, M.D.*, 93 N.E.3d 745, 752 (Ind. 2018). The contract provides:

> Each of you [account holders] also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account.

(Kelley Aff. 13, ECF No. 47-2.)  It further provides:

> We will give only provisional credit until collection is final for any items, other than cash, we accept for deposit (including items drawn "on us"). . . . . We may reverse any provisional credit for items that are lost, stolen, or returned. Unless prohibited by law, we also reserve the right to charge back to your account the amount of any item deposited to your account or cashed for you which was initially paid by the payor bank and which is later returned to us due to an allegedly forged, unauthorized or missing endorsement, claim of alteration, encoding error, counterfeit cashier's check or other problem which in our judgment justifies reversal of credit.

(*Id.*)  Furthermore, it provides:

> This agreement is subject to Article 4A of the Uniform Commercial Code – Fund Transfers as adopted in the state in which you have your account with us. . . . These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited.

(*Id.* at 17.)  Finally, it provides:

> Electronic direct deposits will be available on the day we receive the deposit. . . . Please remember that even after we have made funds available to you, and you have withdrawn the funds, you are still responsible for checks you deposit that are returned to us unpaid and for any other problems involving your deposit.

(*Id.* at 21.)  The Court finds these provisions unambiguous, and no reasonable juror could find otherwise. *Ruff v. Charter Behavior Health Sys.*, 699 N.E.2d 1171, 1176 (Ind. Ct. App. 1998) (measuring ambiguity against the understanding of "reasonably intelligent persons").  The contract says that Merchants will provide provisional credit for electronic transfers into Curby's account; that Curby will have same-day availability of those funds; but that should the transfer be reversed due to

7

fraud, Curby is responsible for any resulting shortfall. *See Sapp v. Flagstar Bank, FSB*, 12 N.E.3d 913, 925 (Ind. Ct. App. 2014) (construing identical "jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts" language to find that account holder is liable for overdraft resulting from reversed provisional credit). And, although the dollar amounts at stake here are large, the basic principles are fair: if you give the bank a bad check for $20, and it lets you have $20 cash on the strength of it, you cannot be surprised when the bank, upon learning the check is in fact bad, asks for its money back.

Here, Curby received a provisional credit of $250,000 for the initial deposit into her account. She had use of those funds, which allowed her to transfer them to her Georgia account. Curby emptied the Merchants account, which caused an overdraft when the $250,000 credit was reversed due to fraud. Because Curby "agree[d] to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts," (Kelley Aff. 13, ECF No. 47-2), and there is a $226,994.50 shortage here, Curby has breached the contract by failing to repay Merchants.

### iii. Unconscionability

Finally, Curby argues that the Merchants account contract is unconscionable. (Def.'s Resp. 21–22, ECF No. 53.) In Indiana, a contract is unconscionable if no sensible person would freely agree to it. *Roddie v. N. Am. Manufactured Homes, Inc.*, 851 N.E.2d 1281, 1285 (Ind. Ct. App. 2006). The contract at issue here is nowhere near that boundary. No reasonable juror could find it so. As sketched above, it is perfectly fair for an account holder to be responsible for the provisional funds she

8

used, if it later turns out she was not entitled to them. Curby could have avoided liability by keeping the funds around until she was sure they were hers; this dispute arose because she moved them away so quickly.

B. Counterclaim

Curby's counterclaim concerns a mistake Merchants made in the series of transfers between Curby's Merchants account and her Georgia account. After the initial $250,000 had been deposited in the Merchants account, Curby asked Merchants to send $198,000 by ACH to her Georgia account. Merchants instead sent money the other way, from Curby's Georgia account to her Merchants account. Curby noticed the error the next day and notified Merchants. Merchants, to fix the problem, wired $400,000[2] from the Merchants account to the Georgia account. All the funds were now where Curby wanted them. (Curby would then go on to send the funds out of her Georgia account, allegedly to the "Well & Able" fraudsters.)

Curby nonetheless argues that Merchants' decision to *wire* its make-up transaction, instead of going through ACH, caused the ultimate loss of the money. She argues that, had the Merchants-Georgia transaction been ACH, she would have been able to reverse it (and so prevent the funds ever having been available in her Georgia account for her to send away).

That argument fails, even without getting into questions of superseding cause or the technicalities of originating and receiving banks. Only unauthorized ACH

---

[2] $198,000 to reverse the mistake, $198,000 to make the transfer Curby originally wanted, and $4,000 extra, apparently because Curby told Merchants she "liked even numbers." (ECF No. 47-2 at 47.)

9

transactions are reversible, 15 U.S.C. § 1693f(f), and transactions initiated by the account holder are not unauthorized, 15 U.S.C. § 1693a(12). So, even if Merchants had sent its make-up transfer by ACH, as Curby requested, Curby directed the transfer; it was not unauthorized; it could not have been reversed.

Thus the legal outcome is the same as the common-sense outcome: Merchants' initial mistake, and its choice of funds-transfer mechanism to rectify that mistake, have nothing to do with the ultimate loss. Curby got the funds where she wanted them—in her Georgia account. That she soon after decided to send the funds off, allegedly to fraudsters, is the fault not of Merchants but of her own credulity.

Merchants seeks summary judgment only as to the causation element of Curby's counterclaim. (Pl.'s Br. Supp. 22 n.8, ECF No. 48.) As a matter of law, Merchants did not cause Curby's loss.

## IV.    Conclusion

There are no genuine disputes of material fact, and Merchants is entitled to judgment as a matter of law on Count III of its Complaint, for breach of contract, and on the causation element of Curby's counterclaim. Merchants' Motion for Partial Summary Judgment, (ECF No. 46), is therefore **granted.**

Because this is a partial disposition of the case, the Court will not at present enter a separate Rule 58(a) judgment. The Court will also defer ruling on the question of pre-judgment interest.

**SO ORDERED.**

Date: 11/3/2022

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

10

Distribution by CM/ECF to registered counsel of record.